[No. E004475. Fourth Dist., Div. Two. May 23, 1988.]

WESTFIELD INSURANCE COMPANY, Plaintiff and Respondent,
v.
BEATRICE DeSIMONE et al., Defendants and Appellants.

## COUNSEL

Allen & Flatt, John C. Flatt and Christian W. Wilbert for Defendants and Appellants.

Stockdale, Peckham & Werner and David C. Werner for Plaintiff and Respondent.

## OPINION

**McDANIEL, J.**—Notwithstanding what we thought was settled over a decade ago in *Vanguard Ins. Co.* v. *Schabatka* (1975) 46 Cal.App.3d 887 [120 Cal.Rptr. 614], defendants here have appealed from a judgment in a declaratory relief action which restricted the policy exposure of Westfield Insurance Company (plaintiff) to the "per person" limit of $100,000 rather than the "per occurence" limit of $300,000. The individual defendants are the surviviors and heirs of Leonardo DeSimone who died as a result of injuries inflicted out of their presence by plaintiff's insured in a multivehicle collision. The issue, as it was in *Vanguard,* is whether the heirs are entitled to recover on an alleged, nonderivative cause of action, in addition to the estate's entitlement to recover for the wrongful death. There is nothing new here, but apparently it needs to be said again.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the stipulated facts, Leonardo DeSimone (the decedent) died as a result of injuries sustained when Kenneth Gulley's (Gulley's) Toyota Celica collided with the decedent's Cadillac Eldorado while it was legally parked on the shoulder of Interstate 15 south of Corona. At the time of the collision, Gulley was insured under an automobile insurance policy (the policy) issued by plaintiff, which provided for liability for bodily injury in a maximum amount of $100,000 for each person and $300,000 for each occurrence. The policy recited that the foregoing $100,000 limit was plaintiff's "maximum limit of liability for all damages for *bodily injury* sustained by any one person in any one auto accident. . . . *regardless of the number of . . .* [c]*laims made*" (italics added), and that plaintiff would "apply the

limit of liability to provide any separate limits required by law for bodily injury [without] chang[ing] [its] total limit of liability."

After the collision, the decedent's wife and five children (the heirs), none of whom had witnessed the collision, filed an action against Gulley for wrongful death. On behalf of Gulley, plaintiff tendered its "per person" limit of $100,000. The heirs acknowledged plaintiff's payment of the $100,000 as partial satisfaction of its liability, and contended that they were entitled to the "per occurrence" limit of $300,000, for the reason that each heir had a separate and independent claim for *bodily injury*, which was not derived from the claim of the decedent.

Thereupon, plaintiff filed the current action for declaratory relief, and the case was tried to the court on the stipulated set of facts noted. After a hearing, which was not reported, the court filed a minute order which recited, in relevant part: "The court finds that the limits afforded by [the] policy is [the] $100,000 'per person' liability limitation, rather than the $300,000 'per occurrence' limitation . . . the heirs and estate are limited by CCP 377[1] and the court is persuaded by the reasoning of the *Schabatka* case [*Vanguard Ins. Co.* v. *Schabatka, supra,* 46 Cal.App.3d 887]. The heirs neither witnessed the accident . . . nor can qualify under a cause of action for loss of consortium. . . . The court finds the heirs do not each possess a separate and distinct cause of action, but, have [no] independent rights other than those afforded by CCP 377."

Thereafter, judgment was entered in accordance with the court's ruling, and defendants have appealed.

### DISCUSSION

■ Defendants contend first that the trial court erred in ruling that each heir did not have a separate and distinct cause of action under Code of Civil Procedure section 377. Not so. In *Vanguard Ins. Co.* v. *Schabatka, supra,* 46 Cal.App.3d 887, which the trial court expressly relied upon in making its ruling, this court rejected an argument almost identical to the one advanced by defendants in the case here, namely that the decedent's heirs "were separately injured because of the death of their wife and mother and hence can together make claim on the multiple limits of the policy." (*Id.,* at p. 893.) We reasoned, in *Vanguard,* that the heirs' claims did not constitute separate *bodily injuries* under the policy, but rather separate *elements of*

---

[1] Code of Civil Procedure section 377 recites, in relevant part: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs . . . may maintain an action for damages against the person causing the death . . . The respective rights of the heirs in any award shall be determined by the court."

*damages* flowing from the single bodily injury of the decedent. (*Id.,* at p. 894.) We then noted that in *Campbell* v. *Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105, at p. 109 [67 Cal.Rptr. 175], Justice Tamura, writing for this court, had disposed of a similar contention by observing ". . . where only one person was killed in an accident, the policy limit was $10,000 [the single injury limit] regardless of the number of heirs damaged." (*Id.*)

■ Defendants nevertheless argue that this is a case of "first impression" and that *Vanguard* is distinguishable from the case here because the policy in *Vanguard* contained the words "including damages for care or loss of services" (" 'The limit of liability . . . is the limit of the company's liability for all damages, *including damages for care or loss of services,* because of bodily injury sustained by any one person as the result of any one accident' ") (*Vanguard Ins. Co.* v. *Schabatka, supra,* 46 Cal.App.3d 887, at p. 893, italics added), and the policy in the case here did not contain any such language. Defendants argue that such absence rendered the policy here ambiguous, and entitled defendants to recover under the multiple injury limit. Such an argument is wholly without merit if not specious.

First, in *Campbell, supra,* 260 Cal.App.2d 105, which we relied on in *Vanguard,* the policy did not contain any qualifying language such as that in *Vanguard* defining "all damages" as "including damages for care or loss of services," and, as stated in *Vanguard,* the *Campbell* policy was "substantially the same in its legal effect as the pertinent language contained in the policy under interpretation here." (*Vanguard Ins. Co.* v. *Schabatka, supra,* 46 Cal.App.3d 887, at p. 894, fn. 1.)[2]

In addition, the policy here contains language which (apparently) was not included in the *Vanguard* policy, and which makes this policy even less ambiguous than that in *Vanguard,* namely: "This [the maximum limit for all damages for bodily injury sustained by any one person] is the most we will pay *regardless of the number of . . . [c]laims made.*" (Italics added.)[3]

In sum, defendants' attempts to distinguish *Vanguard* are pure sophistry, and the trial court properly applied that holding to the case here.

---

[2] In their reply brief, defendants contend that *Campbell* was decided incorrectly "in that the policy language quoted did not contain the crucial language '. . . including damages for care or loss of services.' " However, as we have shown, *supra,* and shall repeat, *infra,* the language defendants rely on is *not* crucial to an application of the "per person" policy limit.

[3] Defendants also contend that the policy here is ambiguous because it does not include death within the definition of bodily injury. However, in *Vanguard* the policy contained no such inclusion, and we held in that case that that policy was not ambiguous. "Bodily injury" requires no further definition. An injury is one thing; the damages which flow from it are another.

■ Defendants otherwise contend that they are each entitled to the same nonderivative claim for damages for bodily injury as a spouse would have in a loss of consortium case. In support of this contention, defendants rely on *Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 [212 Cal.Rptr. 852], where a divided court held that the wife of a man who had been injured in a vehicular collision had a separate, nonderivative cause of action for "bodily injury" based on her loss of consortium, and hence was not subject to the "per person" liability limitation in the insured's policy. However, such contention was raised and rejected by the trial court in its minute order here: "the Abellon case . . . was not a wrongful death action. [¶] Here, the heirs and estate are limited by CCP 377."

Defendants argue that the elements for damages for loss of consortium, such as loss of " 'support or services . . . love, companionship, affection, society, sexual relations, solace and more' " (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 405 [115 Cal.Rptr. 765, 525 P.2d 669]) are the same whether the victim lives or dies, i.e., that such elements are recoverable by the surviving spouse in an independent cause of action although coupled with a wrongful death count. However, the issue in the case here is not whether such an independent cause of action may be pursued in *any* wrongful death suit, but whether such an independent cause of action is one for *bodily injury* in *this* wrongful death suit.

The *Abellon* majority ruled that the wife's loss of consortium injury could be an independent bodily injury under the insurance policy, if the loss of consortium were accompanied by *emotional distress which resulted in bodily injury.* (*Abellon* v. *Hartford Ins. Co., supra,* 167 Cal.App.3d 21, pp. 26-30.) However, "California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action." (*Krouse* v. *Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022].) Accordingly, the rationale in *Abellon* which led to the court's ruling that the wife was "a second person injured by the accident" (*id.,* at p. 26) is not applicable in the case here.[4]

Moreover, in *United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957 [135 Cal.Rptr. 34], this court held, consistent with our ruling in *Vanguard* the previous year, that "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. . . . [¶] Although a sensitive person may

---

[4]Defendants argue vigorously that they are not seeking damage for emotional distress. However, while defendants may not *label* their injuries "emotional distress," they are not entitled to recover thereunder unless those injuries were *accompanied* by emotional distress. Accordingly, the distinction defendants claim is indeed a distinction without a difference.

actually suffer physical illness as a result of being deprived of that conjugal affection, it is not that illness which gives rise to the claim. *The fact that loss of consortium may have physical consequences does not convert the cause of action into an action for bodily injury to the spouse suffering the loss.* Such consequences would be an element of damage, the consequential damage arising out of the injury to the injured spouse." (*Id.,* at pp. 964-965, italics added.)

The *Abellon* dissent relied upon *Warner,* and the *Abellon* majority attempted to distinguish *Warner* on the basis of the different language in the respective insurance policies. However, as we stated in *Warner,* "While the policy language in the cited cases was not always identical with the language used in appellant's policy . . . *the principle consistently followed has been that where one person was injured or killed in the accident or occurrence, the single injury limit applied, regardless of the number of persons damaged as a result of that injury."* (*United Services Automobile Assn.* v. *Warner, supra,* 64 Cal.App.3d 957, at p. 963.)

Finally, in response to defendants' contention that *all* the heirs (i.e., the decedent's widow *and* children) are entitled to recover the same damages as an injured spouse in a loss of consortium case, although children of a deceased parent each have a cause of action in a wrongful death suit for the value of the deceased's affection and society (*Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858]), the issue in *this* wrongful death suit is whether the defendant children's deprivation of the decedent's affection and society permits them each to have a cause of action for *bodily injury.* It does not, because: (1) such deprivation must be accompanied by emotional distress to constitute bodily injury (*Abellon, supra,* 167 Cal.App.3d 21) and emotional distress damages are not recoverable in a wrongful death action (*Krouse, supra,* 19 Cal.3d 59), and (2) even if such damages were recoverable in such an action, they would be recoverable only as consequential damages arising out of the bodily injury to the decedent, and not as damages arising out of the bodily injuries to the children. (*Warner, supra,* 64 Cal.App.3d 957). Accordingly, defendant's contention as to the children's separate causes of action is likewise without merit.[5]

In view of all the above, the trial court correctly ruled that the policy limit applicable to defendant's claim was the $100,000 "per person" limit.

---

[5] On this issue, defendants apparently rely on dicta in the decision by a different panel of the Abellon court in *Interinsurance Exchange* v. *Campbell* (1986) 187 Cal.App.3d 242 [232 Cal.Rptr. 27]. However, that dicta states only that "Code of Civil Procedure section 377 sanctions the rights of the adult children to recover for their injuries as being separate and distinct from [the decedent's] injuries" (*id.,* at p. 247). However, the opinion *does not state* that the injuries of the adult children were *bodily* injuries, and thus separately recoverable as such.

## DISPOSITION

The judgment is affirmed.

Campbell, P. J., and Dabney, J., concurred.